## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MAC ACQUISITION LLC, *et al.*,[1] | Case No. 17-12224 (___) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ORDER (A) AUTHORIZING CONTINUATION OF, AND PAYMENT OF PREPETITION OBLIGATIONS INCURRED IN THE ORDINARY COURSE OF BUSINESS IN CONNECTION WITH, CUSTOMER PROGRAMS, AND (B) AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO

Mac Acquisition LLC and its affiliated debtors and debtors in possession in the above-caption chapter 11 cases (collectively, the "Debtors") hereby move the Court (this "Motion") for the entry of an order (the "Proposed Order"), substantially in the form annexed hereto as Exhibit A, pursuant to sections 105(a), 363, 1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (a) authorizing, but not directing, the Debtors to continue the Customer Programs and Customer Obligations (each as defined below) in the ordinary course of the Debtors' business and to honor or pay prepetition obligations in respect thereof; (b) authorizing banks and other financial institutions at which the Debtors hold accounts (collectively, the "Banks") to honor and process check and electronic transfer requests related to the foregoing;

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Mac Acquisition LLC (6362); Mac Parent LLC (6715); Mac Holding LLC (6682); Mac Acquisition of New Jersey LLC (1121); Mac Acquisition of Kansas LLC (3910); Mac Acquisition of Anne Arundel County LLC (6571); Mac Acquisition of Frederick County LLC (6881); Mac Acquisition of Baltimore County LLC (6865); and Macaroni Grill Services LLC (5963).  The headquarters for the above-captioned Debtors is located at 1855 Blake St., Ste. 200, Denver, CO 80202.

and (c) granting related relief.   In support of this Motion, the Debtors rely upon and incorporate

by reference the *Declaration of Nishant Machado in Support of the Debtors' Chapter 11*

*Petitions and Requests for First Day Relief* (the "First Day Declaration"), which was filed

concurrently herewith.  In further support of this Motion, the Debtors respectfully represent as

follows:

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and

157, and the *Amended Standing Order of Reference* from the United States District Court for the

District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28

U.S.C. § 157(b), and pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final

order by the Court in connection with this Motion to the extent that it is later determined that the

Court, absent consent of the parties, cannot enter final orders or judgments in connection

herewith consistent with Article III of the United States Constitution.  Venue is proper before the

Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested

herein are sections 105(a), 363, 1107(a), and 1108 of the Bankruptcy Code, Bankruptcy Rules

6003 and 6004, and Local Rule 9013-1(m).

**BACKGROUND**

**A.      General Background**

2.      On the date hereof (the "Petition Date"), each of the Debtors commenced a

voluntary case under chapter 11 of the Bankruptcy Code.  Pursuant to sections 1107(a) and 1108

of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors

in possession.

3.      Contemporaneously herewith, the Debtors filed a motion seeking joint

administration of their chapter 11 cases (collectively, the "Chapter 11 Cases") pursuant to

01:22431089.6

2

Bankruptcy Rule 1015(b) and Local Rule 1015-1.  No trustee, examiner, or official committee of unsecured creditors has been appointed in the Chapter 11 Cases.

4.       Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of the Chapter 11 Cases can be found in the First Day Declaration.

**B.       The Debtors' Customer Programs**

5.       Prior to the Petition Date, both in the ordinary course of the Debtors' business and as is customary in the industry, the Debtors offered and engaged in certain customer and other programs and practices (collectively, the "Customer Programs").  The Customer Programs include, but are not limited to, the following (as described in detail below): (1) co-branded, prepaid gift cards sold pursuant to the Brinker Agreement (as defined below) (the "Brinker Gift Cards"); (2) prepaid gift cards sold by the Debtors outside of the Brinker Agreement (the "Mac Gift Cards"); (3) various coupon, discounts, promotions and all such other similar policies, programs, and practices of the Debtors; and (4) the Customer Refunds (defined below).

6.       In order to effectuate a smooth transition into chapter 11, the Debtors must maintain customer loyalty and goodwill by maintaining and honoring the Customer Programs. Indeed, the Debtors implemented the Customer Programs in the ordinary course of business prior to the Petition Date as a means to enhance customer satisfaction, develop and sustain customer relationships and loyalty, improve profitability and ensure that the Debtors remain competitive in their industry.  Accordingly, the Debtors' ability to honor the Customer Programs in the ordinary course of business is necessary to retain their customer base and reputation within their industry. On account of the Customer Programs, the Debtors may owe certain obligations to their customers as well as other third parties, arising both before and after the Petition Date (collectively, the "Customer Obligations").

7.      The success and viability of the Debtors' business, and ultimately the Debtors' ability to maximize the value of the Debtors' estates, are dependent upon the patronage and loyalty of their customers.  In this regard, the Customer Programs are critical, and any delay in honoring Customer Obligations will severely and irreparably impair customer relations and drive away valuable customers, thereby harming the Debtors' efforts to maximize value for all interested parties.

8.      Accordingly, the Debtors seek authority to continue, in their discretion, to honor the Customer Programs, including, in their discretion, Customer Obligations arising therefrom. Significant Customer Programs are described in more detail below.

### (1)     The Brinker Gift Cards

9.      In 2008, Mac Acquisition LLC entered into an agreement (the "Brinker Agreement") with Brinker Services Corporation ("Brinker") to distribute and honor the co-branded Brinker Gift Cards.  The Brinker Agreement was later assigned to Debtor Macaroni Grill Services LLC.  Once purchased, a Brinker Gift Card can be used at any restaurants owned or franchised by the Debtors (the "Mac Restaurants") or certain restaurants owned or franchised by Brinker (the "Brinker Restaurants"), but may not be redeemed for cash or monetary credit except under limited circumstances as required by law.  Up to $250 may be loaded on an individual Brinker Gift Card.  A Brinker Gift Card may be redeemed at any time with no expiration date.

10.     The Brinker Gift Cards were primarily distributed to third party retailers for sale to customers, and are not customarily sold at the Debtors' restaurants; franchised Mac Restaurants do not sell Brinker Gift Cards.  Upon purchase, the gift cards are "activated" and the location selling and activating the Brinker Gift Card retains the proceeds of the Brinker Gift

Card, subject to a monthly "true-up" to reimburse the location where the Brinker Gift Card is later redeemed.  The Brinker Agreement expired on June 30, 2017, but, pursuant to the Brinker Agreement, Brinker may continue to sell and activate the Brinker Gift Cards until the current stock is depleted.  Further, the Debtors and Brinker will continue to redeem activated Brinker Gift Cards, and will continue to comply with and make payments in accordance with the monthly true-up.

11.     The "true-up" provides that (a) if a Brinker Gift Card was activated at a Mac Restaurant and subsequently redeemed at a Mac Restaurant, then the Debtors shall be solely responsible for all amounts related to such redemption; (b) if a Brinker Gift Card was activated at a Mac Restaurant and subsequently redeemed at a Brinker Restaurant, then the Debtors shall pay to Brinker an amount equal to such redemption; (c) if a Brinker Gift Card was activated at a Brinker Restaurant and subsequently redeemed at a Brinker Restaurant, then Brinker shall be solely responsible for all amounts related to such redemption; (d) if a Brinker Gift Card was activated at a Brinker Restaurant and subsequently redeemed at a Mac Restaurant, then Brinker shall pay to the Debtors an amount equal to such redemption; (e) if a Brinker Gift Card was activated at a third party retailer and subsequently redeemed at a Mac Restaurant, then Brinker shall pay to the Debtors an amount equal to such redemption, as adjusted pursuant to the Brinker Agreement; (f) if a Brinker Gift Card was activated at a third party retailer and subsequently redeemed at a Brinker Restaurant, then Brinker shall be solely responsible for all amounts related to such redemption; and (g) if a Brinker Gift Card was activated by Brinker at any other location and subsequently redeemed at Mac Restaurant, then Brinker shall pay to the Debtors an amount equal to such redemption, as adjusted pursuant to the Brinker Agreement.

12.     The Brinker Gift Cards program is administered by Brinker, not the Debtors.  As a result, the Debtors do not possess detailed information about holders of Brinker Gift Cards. However, based on the Debtors' records, as of the Petition Date, approximately $1.2 million in Brinker Gift Cards activated by Mac Restaurants is outstanding.  In 2017 leading up to the Petition Date, monthly true-up payments made by Brinker to the Debtors averaged $25,000.  The Debtors have historically received positive net payments each month from Brinker pursuant to the "true up".  The Debtors seek the authority, but not the direction, to continue to honor the Brinker Gift Cards in the ordinary course of business during the pendency of the Chapter 11 Cases, whether purchased before or after the Petition Date, consistent with past practices, and to honor any obligations under the Brinker Agreement in the ordinary course of business, whether relating to Brinker Gift Cards activated before or after the Petition Date.

### (2)    Mac Gift Cards

13.     In addition to the Brinker Gift Cards, the Debtors sell the Mac Gift Cards, redeemable only at Debtor-owned or franchised restaurants, at the Debtors' locations, online and at third-party locations.  Once purchased, a Mac Gift Card can be used at any restaurants owned or franchised by the Debtors, but may not be redeemed for cash or monetary credit except under limited circumstances as required by law.  Up to $1,000 may be loaded on an individual Mac Gift Card.  A Mac Gift Card may then be redeemed at any time with no expiration date.

14.     The Debtors net credits for Mac Gift Cards activated at a Debtor-owned restaurant and subsequently redeemed at a franchised restaurant and deductions for Mac Gift Cards activated at a franchised restaurant and subsequently redeemed at a Debtor-owned restaurant against the franchise fees paid by a franchisee to the Debtors.

01:22431089.6

15.     Paytronix (the "Processor") processes the Mac Gift Cards and maintains records associated with activity related to the redemption of Mac Gift Cards.  The Processor provides the Debtors a portal where the Debtors can manage the card inventory and generate reporting.  The Processor charges the Debtors per-card transaction fees (the "Processor Fees") in connection with the processing of Gift Cards.  The Debtors have paid all Processor Fees on a timely basis. The Debtors estimate that as of the Petition Date approximately $4,000 in Processor Fees is accrued and unpaid.

16.     As of the Petition Date, approximately $4,000,000 in Mac Gift Cards is outstanding.  In 2017 leading up to the Petition Date, approximately $300,000 in Mac Gift Cards was redeemed each month.  The Debtors seek the authority to continue to honor the Mac Gift Cards in the ordinary course of business during the pendency of the Chapter 11 Cases, whether purchased before or after the Petition Date, consistent with past practices.

*(3)     Promotions*

17.     In the ordinary course of their business, the Debtors issue additional coupons, discounts and promotions (collectively, the "Promotions") that are redeemable for a certain dollar amount, percentage discount, or free meal.  The Promotions are not redeemable for cash. Coupons and promotions generally expire within 2 months, while discounts are offered on a continuous basis.  Promotions that expire state the applicable expiration date on the Promotion.

18.     The Promotions are offered through social media, direct mailings and the Debtors' "E-Club" mailing list (the "E-Club"). As of the Petition Date, there were approximately 1,472,843 customers enrolled as E-Club members (collectively, the "Members").[2]  The Debtors issue "welcome" coupons to new Members, birthday coupons, and anniversary coupons to

---

[2]     The Debtors do not believe that the Members are creditors.  Therefore, the Debtors will not be mailing the Members notices during the bankruptcy proceeding except as they deem appropriate or as otherwise ordered by the Court.

Members to drive more business.  Redemptions of the Promotions offered under the E-Club vary greatly from month-to-month.  In 2017 leading up to the Petition Date, monthly redemptions ranged from $41,511 to $382,278, but averaged approximately $169,378 per month.

19.     The E-Club is managed by Fishbowl Inc. (the "E-Club Manager").  The Debtors and the E-Club Manager entered into a certain services agreement, pursuant to which the E-Club Manager maintains the website dedicated to the E-Club and arranges marketing communications to Members.  The E-Club Manager charges the Debtors specified fees on a monthly basis in arrears for managing the E-Club and providing other related marketing and customer relationship management services (collectively, the "E-Club Fees").  The Debtors estimate that as of the Petition Date approximately $20,000 in E-Club Fees is accrued and unpaid.  The E-Club Manager is critical to the Debtors' efforts to continue to drive customer traffic and manage the E-Club.  Without the E-Club Manager, the Debtors would have to invest or divert significant resources in an attempt to manage the E-Club internally or seek another third party to fill the void that would necessarily result if the E-Club Manager were to cease its management of the E-Club.

20.     The Debtors believe that continuing to honor the Promotions and the E-Club Fees is essential to maintaining their relationships with their customers.  Accordingly, the Debtors seek the authority to continue, in their discretion, to administer and honor the Promotions in the ordinary course of business, consistent with past practices.

### *(4)     Customer Refunds*

21.     In the ordinary course of their business, the Debtors offer refunds to guests that contact the Debtors regarding a bad experience at one of the Debtors' locations (the "Customer Refunds").  The Debtors issue the Customer Refunds in the hopes of retaining the customers as

future guests and to maintain the Debtors' brand reputation.  The Customer Refunds are issued

by check and the Debtors estimate that approximately $2,500 in Customer Refunds have been

issued and are outstanding as of the Petition Date.

22.     The Debtors believe that continuing to honor the Customer Refunds is essential to

maintaining their relationships with their customers.  Accordingly, the Debtors seek the authority

to continue, in their discretion, to administer and honor the Customer Refunds in the ordinary

course of business, consistent with past practices, including causing any prepetition checks that

were given in payment of Customer Refunds to be honored.

**RELIEF REQUESTED**

23.     By this Motion, the Debtors seek entry of the Proposed Order authorizing, but not

directing, the Debtors, in their sole discretion, to maintain and administer all Customer

Programs, to honor the Customer Obligations in the ordinary course of business, and to pay

outstanding prepetition amounts owing on account of the Processor Fees or E-Club Fees.

24.     The Debtors also seek authority for the Banks to receive, process, honor, and pay

checks or electronic transfers used by the Debtors to pay the foregoing and to rely on the

representations of such Debtors as to which checks are issued and authorized to be paid in

accordance with this Motion.

**BASIS FOR RELIEF**

**A.      Continuation of the Customer Programs is Warranted Pursuant to Section 363 of the Bankruptcy Code**

25.     Courts have authorized payment of prepetition obligations under section 363(b) of

the Bankruptcy Code where a sound business purpose exists for doing so.  *See*, *e.g.*, *In re*

*Ionosphere Clubs. Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business

justification existed to justify payment of prepetition wages); *see also Armstrong World Indus.*,

*Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397 (S.D.N.Y. 1983)
(relying on section 363 to authorize a contractor to pay prepetition claims of some suppliers who
were potential lien claimants because payments were necessary for general contractors to release
funds owed to the debtors).  In addition, section 363(c) allows a debtor-in-possession to enter
into transactions involving property of the estate in the ordinary course of business without an
order of the court.  *See, e.g.*, *In re James A. Phillips*, 29 B.R. at 395 n.2 ("Insofar as transactions
are actually in the ordinary course, they are authorized automatically by § 363(c)(1) and
§ 1107(a), and do not require Bankruptcy Court approval.").  Where retaining the loyalty and
patronage of customers is critical to a successful reorganization, courts have not hesitated to
grant the relief requested.  In *In re Federated Dep't Stores, Inc.*, Case No. 1-90-00130, 1990
Bankr. LEXIS 102 (Bankr. S.D. Ohio Jan. 15, 1990), the court authorized debtors to treat
deposits or prepayments on goods and services "in the same manner as Debtors treated Deposits
prior to the commencement of [the] cases."

26.    The relief requested herein is appropriate under each of the foregoing standards.
The Debtors seek to continue their Customer Programs and to honor any Customer Obligations
without interruption during the pendency of the Chapter 11 Cases.  The Customer Programs are
an integral part of the Debtors' business and enable the Debtors to attract and retain customers.
If the Debtors do not honor their Customer Programs in the ordinary course of business, the
Debtors would be significantly less competitive, which would cause a decline in business.

27.    Moreover, the Debtors would risk alienating certain customer constituencies or,
possibly, even encouraging them to initiate business relationships with the Debtors' competitors.
The failure to honor the Customer Programs could erode the Debtors' hard-earned reputation and
brand loyalty, which, in turn, could adversely affect the Debtors' ability to maximize the value of

their estates.  Accordingly, in the exercise of their sound business judgment, the Debtors believe that a sound business purpose exists for the relief requested herein because it will pay dividends with respect to the value of the Debtors' business, both in terms of profitability and the engendering of goodwill, especially at this critical time following the filing of the Chapter 11 Cases.

28.     In addition, because the Debtors pay the Customer Obligations in the ordinary course of business, the Debtors submit that Court approval of the Debtors' payment of postpetition Customer Obligations is not necessary because of the authority granted to them by section 363(c) of the Bankruptcy Code.  Indeed, most, if not all, of the Customer Programs are standard practice in the Debtors' industry.  Nonetheless, out of an abundance of caution, the Debtors request that the Court grant the relief requested herein and enter an order authorizing them to pay the Customer Obligations in the ordinary course of the Debtors' business.

**B.     Continuation of the Customer Programs is Warranted Pursuant to Section 105(a) of the Bankruptcy Code and Under the Doctrine of Necessity**

29.     The Debtors' proposed maintenance of the Customer Programs and honoring and payment of the Customer Obligations, Processor Fees, and E-Club Fees should also be authorized pursuant to section 105(a) of the Bankruptcy Code and the "doctrine of necessity."

30.     Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."  *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).  "Under [section] 105, the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."  *In re NVR L.P.*,

147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177); *accord In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999) ("To invoke the necessity of payment doctrine, a debtor must show that payment of the prepetition claims is 'critical to the debtor's reorganization.'") (quoting *In re Fin. News Network, Inc.*, 134 B.R. 732, 736 (Bankr. S.D.N.Y. 1991)); *see also In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process.")

31.    In a long line of well-established cases, federal courts have consistently permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g.*, *Miltenberger v. Logansport Ry.*, 106 U.S. 286, 311-12 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the . . . [business] during reorganization, payment may be authorized even if it is made out of [the] corpus"); *Dudley v. Mealey*, 147 F.2d 268 (2d Cir. 1945), *cert. denied*, 325 U.S. 873 (1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases); *Michigan Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

32.    The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. *See In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to

authorize trustees to pay claims for goods and services that are indispensably necessary to the

debtors' continued operation); *In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999)

("[C]ourts have used their equitable power under section 105(a) of the Code to authorize the

payment of pre-petition claims when such payment is deemed necessary to the survival of a

debtor in a chapter 11 reorganization.").  The doctrine is frequently invoked early in a chapter 11

proceeding, particularly in connection with payment of prepetition claims.  The court in *In re*

*Structurelite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988), noted that the decisional

authority that supports "the principle that a bankruptcy court may exercise its equity powers

under section 105(a) to authorize payment of prepetition claims where such payment is necessary

to 'permit the greatest likelihood of survival of the debtor and payment of creditors in full or at

least proportionately'" (quoting *In re Chateaugay Corp.*, 80 B.R. at 287).  The court stated that

"a per se rule proscribing the payment of prepetition indebtedness may well be too inflexible to

permit the effectuation of the rehabilitative purposes of the Code."  *Id*. at 932.  The rationale for

the doctrine of necessity rule is consistent with the paramount goal of chapter 11: "facilitating

the continued operation and rehabilitation of the debtor . . . ."  *In re Ionosphere Clubs*, 98 B.R. at

176.

33.     As stated above, maintenance of the Customer Programs and honoring the

Customer Obligations are critical to preserving the Debtors' relationships with their customers,

who are essential to the Debtors' business.  Similarly, the Debtors rely heavily in implementing

its Customer Programs on the services of the Processor and the E-Club Manager, and failure to

pay prepetition amounts owing on account of their fees could undermine the Debtors relationship

therewith, undermining the Debtors' ability to realize the benefits of their Customer Programs.

In turn, the ability of the Debtors to maximize profitability and the value of their business during

the Chapter 11 Cases will be crucial to maximizing value for the benefit of all stakeholders.

Thus, this Court should exercise its equitable powers to grant the relief requested herein.

34.     Moreover, if the Debtors do not honor the Customer Obligations, the Debtors would risk alienating certain customer constituencies or, possibly, even encouraging them to dine with the Debtors' competitors.  The failure to honor the Customer Programs could erode the Debtors' hard-earned reputation and brand loyalty, which, in turn, could adversely affect the Debtors' ability to maximize value for the estates.  Accordingly, in the exercise of their sound business judgment, the Debtors believe that a sound business purpose exists for the relief requested herein because it will pay dividends with respect to the Debtors' ability to maximize value for all interested parties, both in terms of profits and goodwill, especially at this critical time following the filing of the Chapter 11 Cases.

**C.     The Court Should Authorize Applicable Banks to Honor Checks and Electronic Fund Transfers in Accordance with the Motion**

35.     In connection with the foregoing, the Debtors respectfully request that the Court (a) authorize all applicable Banks to receive, process, honor, and pay all checks and transfers issued by the Debtors in accordance with this Motion, without regard to whether any checks or transfers were issued before or after the Petition Date; (b) provide that all Banks may rely on the representations of the Debtors with respect to whether any check or transfer issued or made by the Debtors before the Petition Date should be honored pursuant to this Motion (such banks and other financial institutions having no liability to any party for relying on such representations by the Debtors provided for herein); and (c) authorize the Debtors to issue replacement checks or transfers to the extent any checks or transfers that are issued and authorized to be paid in accordance with this Motion are dishonored or rejected by the Banks.

**D.      Immediate Relief is Justified**

36.      Pursuant to Bankruptcy Rule 6003, the Court may grant relief within 21 days after the filing of the petition regarding a motion to "use, sell, lease, or otherwise incur an obligation regarding property of the estate" only if such relief is necessary to avoid immediate and irreparable harm.  Fed. R. Bankr. P. 6003(b).  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

37.      Moreover, Bankruptcy Rule 6003 authorizes the Court to grant the relief requested herein to avoid harm to the Debtors' customers and other third parties.  Unlike Bankruptcy Rule 4001, Bankruptcy Rule 6003 does not condition relief on imminent or threatened harm to the estate alone.  Rather, Bankruptcy Rule 6003 speaks of "immediate and irreparable harm" generally.  *Cf.* Fed. R. Bankr. P. 4001(b)(2), (c)(2) (referring to "irreparable harm to the estate").  Indeed, the "irreparable harm" standard is analogous to the traditional standards governing the issuance of preliminary injunctions.  *See* 9 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 4001.07[b][3] (16th ed.) (discussing source of "irreparable harm" standard under Rule 4001(c)(2)).  Courts will routinely consider third-party interests when granting such relief.  *See, e.g., Capital Ventures Int'l v. Argentina*, 443 F.3d 214, 223 n.7 (2d Cir. 2006); *see also Linnemeir v. Bd. of Trs. of Purdue Univ.*, 260 F.3d 757, 761 (7th Cir. 2001).

38.      As described herein and in the First Day Declaration, the Debtors will suffer immediate and irreparable harm without Court authorization to continue the Customer Programs uninterrupted or to pay the Processor Fees and E-Manager Fees related thereto.  Accordingly, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

## REQUEST FOR WAIVER OF STAY

39.     To implement the foregoing, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  The Debtors submit that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein.  Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

40.     To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed to apply.

## DEBTORS' RESERVATION OF RIGHTS

41.     Nothing contained herein is intended or should be construed as:  an admission of the validity of any claim against the Debtors; a waiver of the Debtors' rights to dispute any claim; or an approval, assumption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  The Debtors expressly reserve their rights to contest any invoice or claim on account of any Customer Obligation.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

**NOTICE**

42.     The Debtors have provided notice of this Motion to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney General for the District of Delaware; (iv) the Internal Revenue Service; (v) counsel for Raven Capital Management LLC; (vi) counsel for Bank of Colorado; (vii) counsel for Riesen Funding LLC; (viii) the Debtors' cash management banks; and (ix) those creditors holding the thirty (30) largest unsecured claims against the Debtors' estates (on a consolidated basis).  Notice of this Motion and any order entered on this Motion will be served as required by Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated:    Wilmington, Delaware
        October 18, 2017

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Ryan M. Bartley*
Michael R. Nestor (No. 3526)
Edmon L. Morton (No. 3856)
Ryan M. Bartley (No. 4985)
Elizabeth S. Justison (No. 5911)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Tel:   (302) 571-6600
Fax:   (302) 571-1253
Email: mnestor@ycst.com
        emorton@ycst.com
        rbartley@ycst.com
        ejustison@ycst.com

-and-

Jeffrey C. Krause (CA No. 94053)
Michael S. Neumeister (CA No. 274220)
Emily B. Speak (CA No. 294852)
Brittany N. Schmeltz (CA No. 313552)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071
Tel:   (213) 229-7000
Fax:   (213) 229-7520
Email: jkrause@gibsondunn.com
        mneumeister@gibsondunn.com
        espeak@gibsondunn.com
        bschmeltz@gibsondunn.com

*Proposed Counsel for the Debtors*
*and Debtors in Possession*

**EXHIBIT A**

**PROPOSED ORDER**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MAC ACQUISITION LLC, *et al.*,[1] | Case No. 17-_____ (___) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. ____** |

**ORDER (A) AUTHORIZING CONTINUATION OF, AND PAYMENT OF PREPETITION OBLIGATIONS INCURRED IN THE ORDINARY COURSE OF BUSINESS IN CONNECTION WITH, CUSTOMER PROGRAMS, AND (B) AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO**

Upon the *Debtors' Motion for Entry of (A) an Order Authorizing Continuation of, and Payment of Prepetition Obligations Incurred in the Ordinary Course of Business with, Customer Programs, and (B) Authorizing Banks to Honor and Process Checks and Electronic Transfer Requests Related Thereto* (the "Motion")[2] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"); and upon consideration of the First Day Declaration; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1134 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; this Court having found that venue of these cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having determined that it may enter a final order consistent with Article III of the

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Mac Acquisition LLC (6362); Mac Parent LLC (6715); Mac Holding LLC (6682); Mac Acquisition of New Jersey LLC (1121); Mac Acquisition of Kansas LLC (3910); Mac Acquisition of Anne Arundel County LLC (6571); Mac Acquisition of Frederick County LLC (6881); Mac Acquisition of Baltimore County LLC (6865); and Macaroni Grill Services LLC (5963).  The headquarters for the above-captioned Debtors is located at 1855 Blake St., Ste. 200, Denver, CO 80202.

[2]     All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

United States Constitution; and it appearing that notice of the Motion has been given as set forth

in the Motion and that such notice is adequate and no other or further notice need be given;  and

a hearing having been held to consider the relief requested in the Motion; and upon the record of

the hearing on the Motion and all of the proceedings had before this Court; and this Court having

found and determined that the relief sought in the Motion is in the best interests of the Debtors,

their estates, their creditors, and all other parties in interest; and that the legal and factual bases

set forth in the Motion establish just cause for the relief granted herein; and after due deliberation

and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized, but not directed, to maintain and administer, in the

ordinary course of business and in a manner consistent with past practices, the Customer

Programs and to honor the Customer Obligations thereunder in the ordinary course of business as

set forth in the Motion.

3.      Specifically, the Debtors are authorized, but not directed, (a) to continue to issue

and honor the Brinker Gift Cards, the Mac Gift Cards, the Promotions and the Customer

Refunds; (b) to pay amounts due under the Brinker Agreement; and (c) to pay the Processor Fees

and the E-Club Fees.

4.      Each of the Banks is authorized to honor checks presented for payment and all

fund transfer requests made by the Debtors, to the extent that sufficient funds are on deposit in

the applicable accounts, in accordance with this Order and any other order of this Court.

01:22431089.6

5. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests in connection with the Customer Programs and the Customer Obligations that are dishonored or rejected.

6. The Debtors, their officers, employees, and agents are authorized to take or refrain from taking such acts as are necessary and appropriate to implement and effectuate the relief granted herein.

7. Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed (a) an admission as to the validity or priority of any claim against the Debtors or their estates; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.

8. The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

9. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10. This Court shall retain jurisdiction over any matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2017
        Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

01:22431089.6