## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| MAC ACQUISITION LLC, *et al.*,[1] | Case No. 17-12224 (___) |
| Debtors. |  |
|  | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS, PURSUANT TO SECTIONS 105(a), 363, 541, 1107(a), AND 1108 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE PAYMENT OF PREPETITION CLAIMS ARISING UNDER (A) THE PERISHABLE AGRICULTURAL COMMODITIES ACT AND (B) THE PACKERS AND STOCKYARDS ACT, AND (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND ELECTRONIC TRANSFER REQUESTS RELATED TO THE FOREGOING**

Mac Acquisition LLC and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby move the Court (this "Motion") for the entry of interim and final orders, substantially in the forms attached hereto as Exhibits A and B (the "Proposed Interim Order" and the "Proposed Final Order," respectively), pursuant to sections 105(a), 363, 541, 1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy Code") (a) authorizing, but not directing, the Debtors, in their sole discretion, to pay, in the ordinary course of business as such claims come due, all prepetition claims arising under (i) the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499a–499t ("PACA") and (ii) the Packers and Stockyards Act of 1921, as amended, 7 U.S.C. §§ 181–231 ("PASA"), and (b) authorizing the Debtors' banks and financial institutions (collectively, the "Banks") to

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Mac Acquisition LLC (6362); Mac Parent LLC (6715); Mac Holding LLC (6682); Mac Acquisition of New Jersey LLC (1121); Mac Acquisition of Kansas LLC (3910); Mac Acquisition of Anne Arundel County LLC (6571); Mac Acquisition of Frederick County LLC (6881); Mac Acquisition of Baltimore County LLC (6865); and Macaroni Grill Services LLC (5963). The headquarters for the above-captioned Debtors is located at 1855 Blake St., Ste. 200, Denver, CO 80202.

receive, process, honor, and pay all checks and electronic payment requests relating to the

foregoing.  The facts and circumstances supporting this Motion are set forth in the concurrently

filed *Declaration of Nishant Machado in Support of the Debtors' Chapter 11 Petitions and

Requests for First Day Relief* (the "<u>First Day Declaration</u>").[2]  In further support of this Motion,

the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and

157, and the *Amended Standing Order of Reference* from the United States District Court for the

District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28

U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local

Rules"), the Debtors consent to the entry of a final order by the Court in connection with this

Motion to the extent that it is later determined that the Court, absent consent of the parties,

cannot enter final orders or judgments in connection herewith consistent with Article III of the

United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and

1409.  The statutory predicates for the relief requested herein are sections 105(a), 363, 541,

1107(a), and 1108 of the Bankruptcy Code, and Local Rule 9013-1(m).

## BACKGROUND

2.      On the date hereof (the "Petition Date"), each of the Debtors commenced a

voluntary case under chapter 11 of the Bankruptcy Code.  Pursuant to sections 1107(a) and 1108

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in
the First Day Declaration.

of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.

3.     Contemporaneously herewith, the Debtors filed a motion seeking joint administration of their chapter 11 cases (the "Chapter 11 Cases") pursuant to Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 1015(b) and Local Rule 1015-1.  No trustee, examiner, or official committee of unsecured creditors has been appointed in the Chapter 11 Cases.

4.     Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of the Chapter 11 Cases can be found in the First Day Declaration.

5.     As described in detail below, third parties holding claims under PACA or PASA may be able to assert liens against the Debtors' assets.  Further justifying the relief requested herein, due to the nature of the Debtors' businesses, certain vendors may possess claims under section 503(b)(9) of the Bankruptcy Code, which would have to be paid in connection with a confirmed chapter 11 plan, and the Debtors' largest PACA and PASA vendor has filed a UCC-1 financing statement asserting a lien against substantially all of the Debtors' assets to secure payment of any unpaid invoices.  Further, it is critical to the Debtors' business operations that the Debtors continue to receive goods from these vendors.  The Debtors believe that without the relief requested herein, many of the vendors may cease the delivery of goods, which could have devastating consequences for the Debtors' business operations and their efforts in connection with the Chapter 11 Cases.

## RELIEF REQUESTED

6.      By this Motion, the Debtors request entry of the Proposed Interim Order and the

Proposed Final Order, (a) authorizing, but not directing, the Debtors, in their sole discretion, to

pay all prepetition claims arising under PACA and PASA in the ordinary course of business, and

(b) authorizing the Banks to honor and pay all checks and electronic transfer requests for

payment of PACA/PASA Claims (as defined below).[3]

### A.      PACA Claims

7.      To ensure that the Debtors continue to receive a constant supply of fresh fruits

and vegetables postpetition, the Debtors seek authority, but not direction, in their sole discretion,

to continue to pay in the ordinary course of business and consistent with their historical practices,

certain claims (the "PACA Claims") of those vendors that supply the Debtors with fruits and

vegetables (the "PACA Vendors").

8.      Congress enacted PACA to regulate the sale of "perishable agricultural

commodities."  7 U.S.C. § 499a; *see also Endico Potatoes, Inc. v. CIT Grp./Factoring*, 67 F.3d

1063, 1067 (2d Cir. 1995).  Under PACA, the term "perishable agricultural commodity" is

generally defined as "fruits and fresh vegetables of every kind and character" "whether or not

frozen or packed in ice."  7 U.S.C. § 499a(b)(4).  PACA provides various protections to fresh

fruit and vegetable sellers, including the establishment of a statutory constructive trust (a "PACA

Trust"), consisting of a purchaser's entire inventory of food or other derivatives of perishable

agricultural commodities, the products derived therefrom, and the proceeds related to any sale of

---

[3]      Some states have enacted statutes granting protection similar to that of PACA.  *See, e.g.*, Minn. Stat.
§§ 27.01–.19.   Accordingly, references to PACA, PASA, and PACA/PASA Claims (as defined below) in this
Motion are also intended to refer to those state statutes and the goods, claims, and claimants protected thereunder.
The relief requested in the Motion with respect to PACA/PASA Claims is also requested with respect to the goods,
claims, and claimants under those state statues having an effect and purpose similar to PACA or PASA, as
applicable.

the commodities or products (collectively, the "PACA Trust Assets").  *See* 7 U.S.C.

§ 499e(c)(2).  PACA Trust Assets are preserved as a non-segregated floating trust and may be

commingled with non-trust assets.  However, courts in this district and other districts have held

that PACA Trust Assets are not property of a debtor's estate if the vendor has complied with

PACA.  *See Stanziale v. Rite Way Meat Packers, Inc. (In re CFP Liquidating Estate)*, 405 B.R.

694, 697 (Bankr. D. Del. 2009); *In re Long John Silver's Rests., Inc.*, 230 B.R. 29, 32 (Bankr. D.

Del. 1999); *accord Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348

(S.D.N.Y. 1993).

9.      PACA requires that certain procedural steps be taken by a seller of perishable

agricultural commodities in order to preserve its rights as a trust beneficiary.  Specifically, a

PACA Vendor must provide written notice to the purchaser of such goods of its intent to

preserve the benefits of the PACA Trust.  *See Merrill Farms Corp. v. H.R. Hindle & Co. (In re*

*H.R. Hindle & Co.)*, 149 B.R. 775, 785 (Bankr. E.D. Pa. 1993); *Debruyn Produce Co. v.*

*Richmond Produce Co. (In re Richmond Produce Co.)*, 112 B.R. 364 368–69 (Bankr. N.D. Cal.

1990).  Written notice under PACA may be accomplished by either (a) including the statutorily

mandated language on the face of the vendor's invoices or (b) providing written notice to the

purchaser of the PACA goods within thirty (30) days after the time payment is due.

Beneficiaries of a PACA Trust that adhere to the statutory notice requirements are entitled to

prompt payment from the PACA Trust Assets ahead of secured and unsecured creditors of a

debtor's estate.  *See "R" Best Prod., Inc. v. 646 Corp.*, 2002 WL 31453909, at *1 (S.D.N.Y. Oct.

31, 2002).  However, a PACA Vendor's failure to comply with the notice requirements renders

its claim a general unsecured claim in a debtor's chapter 11 case.  *See In re H.R. Hindle*, 149

B.R. at 786.

10.     PACA's application is limited to sales to commission merchants, brokers, and dealers. 7 U.S.C. § 499e(c).  "Dealer," as such term is defined in PACA, is "any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce."  7 U.S.C. § 499a(b).

11.     The Debtors believe that a certain portion of the goods purchased from certain of the vendors may qualify as "perishable agricultural commodit[ies]" under PACA.  As a result, insofar as those vendors abide by the notice requirements of PACA, such vendors will be eligible to assert PACA Claims granting them priority ahead of all other secured and unsecured creditors in the Debtors' Chapter 11 Cases.  Accordingly, payment of PACA Claims at this time will not prejudice or affect the amount available for distributions to other creditors of the Debtors.  To ensure that the supply of fresh produce continues unimpeded, it is imperative that the Debtors be authorized to pay all prepetition and postpetition PACA Claims in the ordinary course of business and consistent with their historical practices.

**B.     PASA Claims**

12.     The Debtors also regularly purchase meat, poultry, and other similar products from vendors (the "PASA Vendors" and, together with the PACA Vendors, the "PACA/PASA Vendors") that may be eligible to assert claims under PASA (the "PASA Claims" and, together with the PACA Claims, the "PACA/PASA Claims").  Much like PACA, PASA protects unpaid sellers of livestock or poultry by imposing a statutory trust (the "PASA Trust" and, together with the PACA Trust, the "PACA/PASA Trusts") on a buyer's entire inventory of livestock or poultry, as applicable, and any related proceeds (the "PASA Trust Assets" and, together with the PACA Trust Assets, the "PACA/PASA Trust Assets").  *See* 7 U.S.C. §§ 196, 197.  This statutory

trust scheme is virtually identical to that under PACA. Indeed, "PACA's trust provision was modeled on that of [PASA]" in the first place. *In re Magic Rests., Inc.*, 205 F.3d 108, 115 n.8 (3d Cir. 2000); *see also In re W.L. Bradley Co.*, 75 B.R. 505, 509 (Bankr. E.D. Pa. 1987) ("The legislative history expressly notes that the PACA trust was modeled on the trust amendments to the Packers and Stockyards Act . . . ."). PASA Trust Assets are not property of a debtor's estate if the vendor has complied with PASA; thus, as with PACA Claims, claims based on a PASA Trust must be satisfied ahead of the claims of any secured creditors holdings liens on a buyer's inventory or accounts receivable. *See Bast v. Orange Meat Packing Co. (In re G&L Packing Co.)*, 20 B.R. 789, 801 (Bankr. N.D. 1982) ("Congress intended unpaid cash sellers to satisfy their claims from the packer's assets (inventoried livestock delivered by the cash seller and accounts receivable and other proceeds from the sale of such livestock) before satisfying any (Uniform Commercial Code) Article 9 perfected security interest in those assets."); *First State Bank of Miami v. Gotham Provision Co. (In re Gotham Provision Co.)*, 669 F.2d 1000, 1010 (5th Cir. 1982) ("Where the packer has given a lender a security interest in inventories or receivables that are subject to the [PASA] trust, the unpaid cash sellers have priority over those assets and may recover the proceeds of those receivables to the extent of the outstanding balance on the cash sales.").

13.    The Debtors believe that a certain portion of the goods purchased from vendors may qualify for treatment under PASA. As a result, insofar as those PASA Vendors abide by the notice requirements of PASA, such vendors will be eligible to assert PASA Claims granting them priority ahead of all other secured and unsecured creditors in the Debtors' Chapter 11 Cases. Accordingly, payment of PASA Claims at this time will not prejudice or affect the amount available for distributions to other creditors of the Debtors. To ensure that the supply of

meat, poultry, and other similar products continues unimpeded, it is imperative that the Debtors

be authorized to pay all prepetition and postpetition PASA Claims in the ordinary of business

and consistent with their historical practices.

### C.     The Debtors' PACA and PASA Liability

14.     As of the Petition Date, the Debtors estimate they owe holders of PACA/PASA

Claims approximately $2.75 million in the aggregate for PACA and PASA goods delivered prior

to the Petition Date.  The Debtors expect to be invoiced for substantially all of this amount

within twenty-one (21) days following the Petition Date.

15.     Approximately $2.25 million of the Debtors' anticipated PACA/PASA Claims is

owed to Sysco Corporation or affiliates, subsidiaries or divisions thereof (collectively, "Sysco").

Mac Acquisition LLC and Sysco are parties to a *Master Distribution Agreement* dated as of July

1, 2016 (as amended from time to time, the "Sysco Agreement"), pursuant to which Sysco has

agreed to provide a substantial majority of the Debtors' food and non-alcoholic beverage

inventory at their restaurants across the country.[4]  Sysco asserts a perfected security interest

against, among other things, the product and inventory distributed to the Debtors pursuant to the

Sysco Agreement, and any proceeds thereof.  The remaining approximately $500,000 of the

Debtors' anticipated PACA/PASA Claims are held by separate third party vendors, which are all

critical to the Debtors' ongoing operations and ability to continue providing top-quality products

to customers.

---

[4]     Approximately 90% of the goods provided by Sysco pursuant to the Sysco Agreement are PACA and
PASA goods.  To the extent Sysco asserts prepetition claims against the Debtors that are not PACA/PASA Claims,
such claims are sought to be paid pursuant to the *Debtors' Motion for Entry of an Order, Pursuant to Sections
105(a), 363(b), 503(b)(9), 1107(a), and 1108 of the Bankruptcy Code, (i) Authorizing the Debtors to Pay Prepetition
Claims of Critical Vendors and (ii) Authorizing Banks to Honor and Process Checks and Electronic Transfer
Requests Related to the Foregoing* (the "Critical Vendor Motion"), filed contemporaneously herewith.

16.     Further, certain PACA/PASA Vendors may also be entitled to administrative expense priority under section 503(b)(9) of the Bankruptcy Code to the extent the Debtors received goods in the ordinary course of business within the 20-day period immediately prior to the Petition Date.  Specifically, the Debtors estimate that as of the Petition Date, of the $2.75 million in estimated PACA/PASA Claims, approximately $2 million of that amount is on account of goods delivered within 20 days of the Petition Date.  Because the Debtors must pay such claims in full to confirm a plan of reorganization, the payment of PACA/PASA Claims that would also qualify as priority claims under section 503(b)(9) merely affects the timing of such payments, and not the amount.

17.     In sum, pursuant to this Motion, the Debtors are requesting authority, but not direction, from the Court to pay PACA/PASA Claims, subject to an aggregate cap of $2.75 million.

18.     Any PACA/PASA Vendor who accepts payment from the Debtors in satisfaction of its valid PACA/PASA Claim will be deemed to have waived any and all claims of whatever type, kind, or priority, against the Debtors, their property, their estates, and any PACA/PASA Trust Assets, but only to the extent that payment has been received by such PACA/PASA Vendor on account of its PACA/PASA Claim.

19.     Subject to the terms set forth below, the Debtors propose to condition the payment of the Claims on the agreement of individual Vendors to continue to provide goods to the Debtors during the pendency of the Chapter 11 Cases on the most favorable terms that existed prior to the Petition Date (the "Historical Trade Terms"), unless this requirement is waived by the Debtors, in their sole discretion.

20.     In the event that any Vendor that has received payment for its Claim refuses to continue to provide goods on an uninterrupted basis to the Debtors in accordance with (a) the terms and provisions of any order granting the relief requested herein, (b) Historical Trade Terms, or (c) such other terms agreed upon by the Debtors and such Vendor, the Debtors propose that, in their sole discretion, they be authorized, but not obligated to, to deem the payments made to any such Vendor to have been in payment of any then-outstanding postpetition claims of such Vendor.  If this situation arises, the previously paid Claims of the Vendor shall be reinstated as Claims in the amount deemed by the Debtors to have been in payment of any then-outstanding postpetition claims of such Vendor.  To the extent that the payments made to the Vendor on account of the previously paid Claims exceed the postpetition amounts then owed to such Vendor, the Debtors and their estates reserve all rights to recover such payments.

## BASIS FOR RELIEF

**A.     Payment of Allowed PACA/PASA Claims in the Ordinary Course of Business Is Warranted.**

21.     The prompt and full payment of PACA/PASA Claims should be authorized by this Court.  As described above, assets governed by PACA and PASA do not constitute property of the Debtors' estates.  *See, e.g., In re CFP Liquidating Estate*, 405 B.R. at 697 (PASA trust assets are excluded from debtor's estate); *Long John Silver's*, 230 B.R. at 32 (PACA trusts are excluded from property of the estate).  As a result, the distribution of assets to the holders of PACA/PASA Claims falls outside the priority scheme set forth in the Bankruptcy Code, and such holders are entitled to payment from the PACA/PASA Trusts ahead of the Debtors' other creditors.  *See, e.g., In re Magic Rests.*, 205 F.3d at 110; *Consumers Produce Co. v. Volante Wholesale Produce, Inc.*, 16 F.3d 1374, 1377–78 (3d Cir. 1994).  The Debtors' requested relief thus affects only the timing of the PACA/PASA Claims payment, and will not prejudice the

recovery of other creditors.  Moreover, the disposition of the PACA/PASA Trust Assets is not

subject to the jurisdiction of the bankruptcy court.  *See Monterey Mushrooms, Inc. v. Carolina*

*Produce Distribs., Inc.*, 110 B.R. 207, 209 (W.D.N.C. 1990); *Allied Growers Co-Op, Inc. v.*

*United Fruit & Produce Co.*, 86 B.R. 14, 16 (Bankr. D. Conn. 1988).  Accordingly, the relief

requested herein does not prejudice the Debtors' creditors or any party in interest in the Chapter

11 Cases.

       22.     Even notwithstanding the substantial protections of PACA and PASA, a

substantial majority of the PACA/PASA Claims would have priority in the Chapter 11 Cases

over general unsecured creditors.  *First*, approximately $2.25 million of the anticipated $2.75

million PACA/PASA Claims are asserted by Sysco, which also asserts a perfected security

interest against its delivered inventory and proceeds therein.  As a result, even absent PACA and

PASA, Sysco would have the rights of a secured creditor, entitling Sysco at a minimum to

adequate protection of its secured interests.  *Second*, of the anticipated $2.75 million

PACA/PASA Claims, approximately $2 million of that amount would be entitled to priority

under section 503(b)(9) of the Bankruptcy Code.  Such claims would have to be paid ahead of

unsecured creditors in connection with any chapter 11 plan.

       23.     Further, payment of allowed PACA/PASA Claims will inure to the benefit of the

Debtors' estates by preserving goodwill between the Debtors and the PACA/PASA Vendors.

Any delays in satisfying amounts owed to PACA/PASA Vendors could adversely affect the

Debtors' ability to obtain fresh produce, meat, poultry, and other similar goods, thereby

undercutting the Debtors' efforts in connection with the Chapter 11 Cases.  Failing to pay

allowed PACA/PASA Claims in the ordinary course of business could subject the Debtors to

numerous claims and adversary proceedings, including motions by PACA/PASA Vendors for

relief from the automatic stay or injunctive relief, which would result in the unnecessary expenditure of time, effort, and money by the Debtors, their management team, and their professional advisors.

24.     Lastly, in certain circumstances, officers or directors of a corporate entity who are in a position to control trust assets but breach the fiduciary duty to preserve those assets may be held personally liable under PACA and PASA.  *See Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997); *Morris Okun*, 814 F. Supp. at 349 (noting that PASA, like PACA, provides that "any failure to account for or preserve trust assets, for whatever reason and however innocent, creates a liability for those trust assets"); *see also Golman-Hayden Co., Inc. v. Fresh Source Produce, Inc.*, 217 F.3d 348, 350 (5th Cir. 2000) (noting that a court determining personal liability under PACA will inquire as to (a) whether the individual's involvement with the corporation was sufficient to establish legal  responsibility and (b) whether the individual, in failing to exercise any appreciable oversight of  the corporation's management, breached a fiduciary duty owed to the PACA creditors).  Thus, to the extent that any valid obligations arising under PACA or PASA remain unsatisfied by the Debtors, the Debtors' officers and directors may be subject to lawsuits during the pendency of the Chapter 11 Cases.  Any such lawsuit (and the ensuing potential liability) would distract the Debtors and their officers and directors in their attempt to implement a successful reorganization strategy and, moreover, could lead to the assertion of substantial indemnification claims under the Debtors' governing documents, employment agreements, and applicable laws, to the detriment of all of the Debtors' stakeholders.

**B.     Request for Authority for Banks to Honor and Pay Checks in Connection Herewith.**

25.     In addition, by this Motion, the Debtors request that their Banks be authorized, when requested by the Debtors, to receive, process, honor, and pay any and all checks presented

for payment of, and to honor all fund transfer requests made by the Debtors related to the

prepetition obligations described herein, whether such checks were presented or fund transfer

requests were submitted prior to or after the Petition Date, provided that sufficient funds are

available in the applicable accounts to make the payments.  The Debtors represent that these

checks are drawn on identifiable disbursement accounts and can be readily identified as relating

directly to the authorized payment of obligations described herein.  Accordingly, the Debtors

believe that checks other than those relating to authorized payments will not be honored

inadvertently.

26.     For the foregoing reasons, the Debtors believe that granting the relief requested

herein is appropriate and in the best interests of their estates and creditors.

**C.      Request for a Finding of Satisfaction of Bankruptcy Rule 6003(b)**

27.     Under Bankruptcy Rule 6003, the Court may authorize the Debtors to satisfy the

Claims because such relief is necessary to avoid immediate and irreparable harm.  Immediate

and irreparable harm exists where the absence of relief would impair a debtor's ability to

reorganize or threaten the debtor's future as a going concern.  *See In re Ames Dep't Stores, Inc.*,

115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and

irreparable harm" in relation to Bankruptcy Rule 4001(c)(2)).

28.     As described above and in the First Day Declaration, the continuity and viability

of the Debtors' business operations relies heavily on the uninterrupted delivery of essential food,

products, and supplies.  The failure of any Vendor to deliver essential food, products, or supplies

to the Debtors would have immediate and detrimental consequences to the Debtors' businesses

and would decrease value to the detriment and prejudice of all of the Debtors' stakeholders.  The

Debtors cannot risk even the perception that their restaurants will offer anything but the highest

level of food and beverage quality and quantity for the duration of the Chapter 11 Cases.

01:22463814.1

Moreover, it is the Debtors' business judgment that continuation of their positive relationship with the Vendors is critical to their continued operations and greatly increases the likelihood of successfully prosecuting the Chapter 11 Cases.

29.    Accordingly, the Debtors respectfully submit that the relief requested herein is necessary to avoid immediate and irreparable harm and that, therefore, Bankruptcy Rule 6003 is satisfied.

<strong><u>REQUEST FOR WAIVER OF STAY</u></strong>

30.    Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth throughout this Motion, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), as any delay in satisfying the Claims would jeopardize the Debtors' business operations and their efforts in connection with the Chapter 11 Cases, to the detriment of their estates and creditors.

31.    For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable to the Proposed Interim Order and Proposed Final Order.

<strong><u>RESERVATION OF RIGHTS</u></strong>

32.    Nothing in the Proposed Interim Order, Proposed Final Order or this Motion (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to the validity, priority, or amount of any claim against the Debtors or their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the

Debtors or their estates with respect to any and all claims or causes of action against a Vendor; or (iv) shall be construed as a promise to pay a claim.

## **NOTICE**

33.    The Debtors have provided notice of this Motion to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney General for the District of Delaware; (iv) the Internal Revenue Service; (v) counsel for Raven Capital Management LLC; (vi) counsel for Bank of Colorado; (vii) counsel for Riesen Funding LLC; (viii)  Sysco Corporation or its counsel, if known; (ix) the Debtors' cash management banks; and (x) those creditors holding the thirty (30) largest unsecured claims against the Debtors' estates (on a consolidated basis).  Notice of this Motion and any order entered on this Motion will be served as required by Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

01:22463814.1

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Interim Order and Proposed Final Order, granting the relief requested herein and such further relief as may be just and proper under the circumstances.

Dated:    Wilmington, Delaware          YOUNG CONAWAY STARGATT & TAYLOR, LLP
         October 18, 2017

*/s/ Michael R. Nestor*
Michael R. Nestor (No. 3526)
Edmon L. Morton (No. 3856)
Ryan M. Bartley (No. 4985)
Elizabeth S. Justison (No. 5911)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Tel:    (302) 571-6600
Fax:    (302) 571-1253
Email:  mnestor@ycst.com
       emorton@ycst.com
       rbartley@ycst.com
       ejustison@ycst.com

-and-

Jeffrey C. Krause (CA No. 94053)
Michael S. Neumeister (CA No. 274220)
Emily B. Speak (CA No. 294852)
Brittany N. Schmeltz (CA No. 313552)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071
Tel:    (213) 229-7000
Fax:    (213) 229-7520
Email:  jkrause@gibsondunn.com
       mneumeister@gibsondunn.com
       espeak@gibsondunn.com
       bschmeltz@gibsondunn.com

*Proposed Counsel for the Debtors*
*and Debtors in Possession*

## **EXHIBIT A**

## **PROPOSED INTERIM ORDER**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MAC ACQUISITION LLC, *et al.*,[1] | Case No. 17-_____ (___) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. _____** |

**INTERIM ORDER, PURSUANT TO SECTIONS 105(a), 363, 507(a)(2), 541, 1107(a), AND 1108 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE PAYMENT OF PREPETITION CLAIMS ARISING UNDER (A) THE PERISHABLE AGRICULTURAL COMMODITIES ACT, (B) THE PACKERS AND STOCKYARDS ACT, AND (C) SECTION 503(b)(9) OF THE BANKRUPTCY CODE AND (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND ELECTRONIC TRANSFER REQUESTS RELATED TO THE FOREGOING**

Upon the *Debtors' Motion For Entry of Interim and Final Orders, Pursuant to sections 105(a), 363, 541, 1107(a), and 1108 of the Bankruptcy Code, (i) Authorizing the Payment of Prepetition Claims Arising under (a) the Perishable Agricultural Commodities Act and (b) the Packers and Stockyards Act, and (ii) Authorizing Banks to Honor and Process Checks and Electronic Transfer Requests Related to the Foregoing* (the "Motion")[2] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"); and upon consideration of the First Day Declaration; and this Court having found that it has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Mac Acquisition LLC (6362); Mac Parent LLC (6715); Mac Holding LLC (6682); Mac Acquisition of New Jersey LLC (1121); Mac Acquisition of Kansas LLC (3910); Mac Acquisition of Anne Arundel County LLC (6571); Mac Acquisition of Frederick County LLC (6881); Mac Acquisition of Baltimore County LLC (6865); and Macaroni Grill Services LLC (5963).  The headquarters for the above-captioned Debtors is located at 1855 Blake St., Ste. 200, Denver, CO 80202.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

*Standing Order of Reference* from the United States District Court for the District of Delaware,

dated February 29, 2012; and this Court having found that venue of these cases and the Motion

in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found

that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having

determined that it may enter a final order consistent with Article III of the United States

Constitution; and it appearing that notice of the Motion has been given as set forth in the Motion

and that such notice is adequate and no other or further notice need be given; and a hearing

having been held to consider the relief requested in the Motion; and upon the record of the

hearing on the Motion and all of the proceedings had before this Court; and this Court having

found and determined that the relief sought in the Motion is in the best interests of the Debtors,

their estates, their creditors and all other parties in interest; and that the legal and factual bases

set forth in the Motion establish just cause for the relief granted herein; and after due deliberation

and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED, on an interim basis, as set forth herein.

2. A final hearing on the relief sought in the Motion shall be conducted on

November _____ 2017, at _____ _____.m. (ET). Any objections to the Motion and to entry of

the Final Order must be filed by November ____, 2017, at 4:00 p.m. (ET) (the "Objection

Deadline") and served so that it is received by the following counsel to the Debtors on or before

the Objection Deadline: (i) Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue, Los

Angeles, CA 90071 (Attn: Jeffrey C. Krause, Esq. and Michael S. Neumeister, Esq.) and

(ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street,

Wilmington, DE 19801 (Attn: Michael R. Nestor and Edmon L. Morton, Esq.). If no objections

are timely filed, this Court may enter the Proposed Final Order without further notice or a hearing.

3.      The Debtors are authorized, in their sole discretion, to pay or otherwise satisfy all valid PACA/PASA Claims in the ordinary course of business in an aggregate amount not to exceed $2,750,000.

4.      Any PACA/PASA Vendor who accepts payment from the Debtors in satisfaction of its valid PACA/PASA Claim will be deemed to have waived any and all PACA/PASA claims of whatever type, kind, or priority against the Debtors, their property, their estates, and any PACA/PASA Trust Assets, but only to the extent that payment has been received by such PACA/PASA Vendor on account of its PACA/PASA Claim.

5.      Nothing in this Order impairs the rights of holders of PACA or PASA Claims to enforce their rights under PACA or PASA consistent with applicable law, including, but not limited to, section 362 of the Bankruptcy Code, or to seek redress from this Court with respect to their rights under PACA or PASA.

6.      In the event that any Vendor that has received payment for its Claim refuses to continue to provide goods and services, as applicable, on an uninterrupted basis, to the Debtors in accordance with (i) the terms and provisions of this Order, (ii) Historical Trade Terms, or (iii) such other terms agreed upon by the Debtors and such Vendor, in their sole discretion, the Debtors shall be authorized, but not obligated, to deem the payments made to any such Vendor to have been in payment of any then-outstanding postpetition claims of such Vendor.  If this situation arises, the previously paid prepetition Claims of the Vendor shall be reinstated as prepetition Claims.  To the extent that the payments made to the Vendor on account of the previously paid Claims exceed the postpetition amounts then owed to such Vendor, all rights of

the Debtors and their estates to recover such payments shall be reserved.  Notwithstanding the foregoing, the Debtors' exercise of remedies pursuant to this paragraph is subject to entry of a further order, which the Debtors may seek by filing a motion to enforce the terms of this Order on not less than five (5) business days' notice to the affected counterparty.

7.      The Banks are authorized to receive, process, honor, and pay all checks presented for payment of, and to honor all funds transfer requests made by the Debtors related to, the Claims paid pursuant to this Order, regardless of whether such checks were presented or funds transfer requests were submitted prior to or after the Petition Date, provided that funds are available in the Debtors' accounts to cover such checks and funds transfers.  The Banks are authorized to rely on the Debtors' designation of any particular check or funds transfer as approved by this Order.

8.      Nothing in this Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to the validity, priority, or amount of any claim against the Debtors or their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against a Vendor; or (iv) shall be construed as a promise to pay a claim.

9.      The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

10.     The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this Order.

11.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

12.    All time periods referenced in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

13.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2017
       Wilmington, Delaware

_____

UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**

**PROPOSED FINAL ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MAC ACQUISITION LLC, *et al.*,[1] | Case No. 17-_____ (___) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. _____** |

**FINAL ORDER, PURSUANT TO SECTIONS 105(a), 363, 507(a)(2), 541, 1107(a), AND 1108 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE PAYMENT OF PREPETITION CLAIMS ARISING UNDER (A) THE PERISHABLE AGRICULTURAL COMMODITIES ACT, (B) THE PACKERS AND STOCKYARDS ACT, AND (C) SECTION 503(b)(9) OF THE BANKRUPTCY CODE AND (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND ELECTRONIC TRANSFER REQUESTS RELATED TO THE FOREGOING**

Upon the *Debtors' Motion For Entry of Interim and Final Orders, Pursuant to sections 105(a), 363, 541, 1107(a), and 1108 of the Bankruptcy Code, (i) Authorizing the Payment of Prepetition Claims Arising under (a) the Perishable Agricultural Commodities Act and (b) the Packers and Stockyards Act, and (ii) Authorizing Banks to Honor and Process Checks and Electronic Transfer Requests Related to the Foregoing* (the "Motion")[2] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"); and upon consideration of the First Day Declaration; and this Court having found that it has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Mac Acquisition LLC (6362); Mac Parent LLC (6715); Mac Holding LLC (6682); Mac Acquisition of New Jersey LLC (1121); Mac Acquisition of Kansas LLC (3910); Mac Acquisition of Anne Arundel County LLC (6571); Mac Acquisition of Frederick County LLC (6881); Mac Acquisition of Baltimore County LLC (6865); and Macaroni Grill Services LLC (5963).  The headquarters for the above-captioned Debtors is located at 1855 Blake St., Ste. 200, Denver, CO 80202.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

*Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that venue of these cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having determined that it may enter a final order consistent with Article III of the United States Constitution; and it appearing that notice of the Motion has been given as set forth in the Motion and that such notice is adequate and no other or further notice need be given; and a hearing having been held to consider the relief requested in the Motion; and upon the record of the hearing on the Motion and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1. The Motion is GRANTED, on a final basis, as set forth herein.

2. The Debtors are authorized, in their sole discretion, to pay or otherwise satisfy all valid PACA/PASA Claims in the ordinary course of business in an aggregate amount not to exceed $2,750,000.

3. Any PACA/PASA Vendor who accepts payment from the Debtors in satisfaction of its valid PACA/PASA Claim will be deemed to have waived any and all PACA/PASA claims of whatever type, kind, or priority against the Debtors, their property, their estates, and any PACA/PASA Trust Assets, but only to the extent that payment has been received by such PACA/PASA Vendor on account of its PACA/PASA Claim.

4.      Nothing in this Order impairs the rights of holders of PACA or PASA Claims to enforce their rights under PACA or PASA consistent with applicable law, including, but not limited to, section 362 of the Bankruptcy Code, or to seek redress from this Court with respect to their rights under PACA or PASA.

5.      If a Critical Vendor accepts payment pursuant to this Order after agreeing to provide services on Customary Trade Terms or Negotiated Trade Terms, and thereafter does not continue to provide goods and services on such terms (regardless of whether a Trade Agreement has been executed), then (i) any payment on account of a Critical Vendor Claim may be deemed, in the Debtors' reasonable business judgment, to be an improper postpetition transfer and, therefore, recoverable by the Debtors in cash upon written request, and (ii) upon recovery of the payment by the Debtors, the Critical Vendor Claim shall be reinstated as if the payment had not been made.  If there exists an outstanding postpetition balance due from the Debtors to a Critical Vendor, the Debtors may elect to recharacterize and apply any payment made pursuant to this Order to such outstanding postpetition balance, and the Debtors may then take any and all appropriate steps to cause such Critical Vendor to repay payments made to it on account of its prepetition claim to the extent that such payments exceed the postpetition amounts then owing to such Critical Vendor.  Notwithstanding the foregoing, the Debtors' exercise of remedies pursuant to this paragraph is subject to entry of a further order, which the Debtors may seek by filing a motion to enforce the terms of this Order on not less than five (5) business days' notice to the affected counterparty.

6.      The Banks are authorized to receive, process, honor, and pay all checks presented for payment of, and to honor all funds transfer requests made by the Debtors related to, the Claims paid pursuant to this Order, regardless of whether such checks were presented or funds transfer

requests were submitted prior to or after the Petition Date, provided that funds are available in the Debtors' accounts to cover such checks and funds transfers.  The Banks are authorized to rely on the Debtors' designation of any particular check or funds transfer as approved by this Order.

7.      Nothing in this Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to the validity, priority, or amount of any claim against the Debtors or their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against a Vendor; or (iv) shall be construed as a promise to pay a claim.

8.      The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

9.      The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this Order.

10.      Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

11.      All time periods referenced in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

12.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2017
          Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

01:22463814.1