## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MAC ACQUISITION LLC, *et al.*,[1] | Case No. 17-12224 (___) |
| Debtors. | |
| | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTIONS 105(a), 363(b), 503(b)(9), 1107(a), AND 1108 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF CRITICAL VENDORS AND (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND ELECTRONIC TRANSFER REQUESTS RELATED TO THE FOREGOING

Mac Acquisition LLC and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby move the Court (this "Motion") for the entry of an order substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to sections 105(a), 363(b), 503(b)(9), 1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy Code") (i) authorizing, but not directing, the Debtors to pay prepetition claims held by critical vendors with claims (the "Critical Vendor Claims") in an aggregate amount not to exceed $700,000 (the "Critical Vendor Cap")[2] and (ii) authorizing the

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Mac Acquisition LLC (6362); Mac Parent LLC (6715); Mac Holding LLC (6682); Mac Acquisition of New Jersey LLC (1121); Mac Acquisition of Kansas LLC (3910); Mac Acquisition of Anne Arundel County LLC (6571); Mac Acquisition of Frederick County LLC (6881); Mac Acquisition of Baltimore County LLC (6865); and Macaroni Grill Services LLC (5963).  The headquarters for the above-captioned Debtors is located at 1855 Blake St., Ste. 200, Denver, CO 80202.

[2]    The Debtors are seeking authority to pay up to an additional $2.75 million in claims under the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499a–499t ("PACA") and the Packers and Stockyards Act of 1921, as amended, 7 U.S.C. §§ 181–231 ("PASA") pursuant to the *Debtors' Motion for Entry of Interim and Final Orders, Pursuant to Sections 105(a), 363, 541, 1107(a), and 1108 of the Bankruptcy Code, (i) Authorizing the Payment of Prepetition Claims Arising Under (a) the Perishable Agricultural Commodities Act and (b) the Packers and Stockyards Act, and (ii) Authorizing Banks to Honor and Process Checks and Electronic Transfer Requests Related to the Foregoing* (the "PACA/PASA Motion") filed contemporaneously herewith.  Approximately $2 million of that amount would also qualify for priority status under Bankruptcy Code section 503(b)(9).  The claims subject to the PACA/PASA Motion are not subject to the relief requested in this Motion.

Debtors' banks and financial institutions (collectively, the "Banks") to receive, process, honor, and pay checks presented for payment and electronic payment requests relating to the foregoing. The facts and circumstances supporting this Motion are set forth in the concurrently filed *Declaration of Nishant Machado in Support of the Debtors' Chapter 11 Petitions and Requests First Day Relief* (the "First Day Declaration").[3]  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1.        The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105(a), 363(b), 503(b)(9), 1107(a), and 1108 of the Bankruptcy Code.

## BACKGROUND

### A.        General Background

2.        On the date hereof (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  Pursuant to sections 1107(a) and 1108

---

[3]        Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.

3.      Contemporaneously herewith, the Debtors filed a motion seeking joint administration of their chapter 11 cases (the "Chapter 11 Cases") pursuant to Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 1015(b) and Local Rule 1015-1.  No trustee, examiner, or official committee of unsecured creditors has been appointed in the Chapter 11 Cases.

4.      Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of the Chapter 11 Cases can be found in the First Day Declaration.

**B.      Critical Vendors**

5.      As of the Petition Date, the Debtors owned and operated 93 restaurants across twenty-three (23) states.  To operate these restaurants, the Debtors require a wide variety of fresh produce, meat, dairy, beverages, condiments, dry and canned goods, and restaurant accessories. Raw groceries are typically delivered directly to the Debtors' restaurant locations on an as-needed basis.  If the delivery of products to the Debtors is stopped or delayed for even one day, the Debtors could not operate their restaurants.  Without a full supply of food and beverages, the Debtors would be extremely disadvantaged in a highly competitive market segment and would suffer swift attrition in customer patronage, which would be difficult, if not impossible, to restore.  The Debtors' business depends on, among other things, the Debtors' ability to retain their vendors and maintain their reputation and customer loyalty.  The Debtors need to be able to assure their customers, vendors, and employees that, notwithstanding the filing of the Chapter 11 Cases, they will continue to operate at the highest level.

6.     To identify the Critical Vendors, the Debtors have reviewed their accounts payable and prepetition vendor lists to identify those creditors most essential to the Debtors' operations pursuant to the following criteria:  (i) whether certain quality specifications or customer expectations prevent the Debtors from obtaining a vendor's products or services from alternative sources within a reasonable timeframe; (ii) whether, if a vendor is not a single-source supplier, the Debtors have sufficient product in inventory to continue their operations while a replacement vendor is put in place; and (iii) whether a vendor meeting the foregoing criteria is able or likely to refuse to ship products to the Debtors postpetition if its prepetition balances are not paid.

## C.     Critical Vendor Claims

7.     It is essential that the Debtors be able to maintain their business relationships with, and honor outstanding payment obligations to, the Critical Vendors in light of the critical role that they play in the day-to-day operation of the Debtors' business.  In addition, approximately $400,000 of the proposed Critical Vendor Claims are on account of claims entitled to administrative expense priority under section 503(b)(9) of the Bankruptcy Code to the extent the Debtors received goods in the ordinary course of business within the 20-day period immediately prior to the Petition Date.  In order to prevent the commencement of the Chapter 11 Cases from causing an unexpected or inopportune interruption to their business operations, the Debtors are therefore seeking authority, in their sole discretion, to pay Critical Vendor Claims up to the $700,000 Critical Vendor Cap.[4]  While the Debtors reserve the right to seek Court authority at a later date to increase the Critical Vendor Cap, payment of the amounts specified

---

[4]     The Critical Vendor Claims do not include any claims arising under (i) the Perishable Agricultural Commodities Act or (ii) the Packers and Stockyards Act, which are the subject of the PACA/PASA Motion filed concurrently herewith.

herein would allow the Debtors to obtain those services most necessary to operating the Debtors' restaurants.

8.      One of the Debtors' largest Critical Vendors is Sysco Corporation, and certain affiliates, subsidiaries, or divisions thereof (collectively, "Sysco").  Mac Acquisition LLC and Sysco are parties to a *Master Distribution Agreement* dated as of July 1, 2016 (as amended from time to time, the "Sysco Agreement"), pursuant to which Sysco has agreed to provide a substantial majority of the Debtors' food and non-alcoholic beverage inventory at their restaurants across the country.  Sysco asserts a perfected security interest against, among other things, the product and inventory distributed to the Debtors pursuant to the Sysco Agreement, and any proceeds thereof.  The Debtors anticipate that, as of the Petition Date, Sysco is owed approximately $2.5 million on account of goods or products delivered to the Debtors prior to the Petition Date.  Approximately $2.25 million of that claim is on account of goods or products subject to protection under PACA or PASA, and the Debtors are not seeking authority to pay that amount as a Critical Vendor Claim pursuant to this Motion.  Approximately $250,000 of Sysco's prepetition claim is not likely subject to PACA or PASA, but are sought to be paid as Critical Vendor Claims pursuant to this Motion.

9.      In determining the amount of the Critical Vendor Cap, the Debtors carefully reviewed all of their vendors to determine which vendors could meet the stringent criteria used to identify the universe of potential Critical Vendors.  Consequently, the Critical Vendor Cap represents the Debtors' best estimate of the prepetition claims that should be paid immediately to ensure a continued supply of critical goods and services.

10.      Given the current state of the Debtors' business, the detailed protocol described below for determining whether to make a Critical Vendor payment, the risks associated with

non-payment, and the fact that a substantial percentage of the Critical Vendor Claims are entitled to administrative expense priority under section 503(b)(9) of the Bankruptcy Code or are asserted as secured claims, the Debtors submit that payment of the prepetition Critical Vendor Claims up to the Critical Vendor Cap is a reasonable and appropriate expenditure of estate funds.[5]

**D.    Terms and Conditions for Payment of Critical Vendor Claims**

11.    In return for paying the Critical Vendor Claims, the Debtors will use commercially reasonable efforts to require the applicable Critical Vendor to provide favorable trade terms in line with historical practices for the postpetition delivery of goods and services or otherwise continue to supply the Debtors with essential goods and services for the duration of the Chapter 11 Cases.  The Debtors therefore request authority, but not direction, to condition the payment of Critical Vendor Claims upon the Critical Vendor's agreement to continue supplying goods or services to the Debtors in accordance with trade terms that are at least as favorable to the Debtors as those practices and programs (including credit limits, pricing, timing of payments, availability, and other terms) in place prior to the Petition Date (the "Customary Trade Terms").

12.    The Debtors also reserve the right to negotiate trade terms with any Critical Vendor, as a condition to payment of any Critical Vendor Claim, that vary from the Customary Trade Terms (the "Negotiated Trade Terms") to the extent the Debtors determine, in their reasonable business judgment, that such terms are necessary to procure essential goods or services or are otherwise in the best interests of the Debtors' estates.

13.    The Debtors may elect to condition the payment of Critical Vendor Claims upon such party's written agreement to continue supplying goods or services on Customary Trade

---

[5]    Nothing in this Motion should be construed as a waiver by the Debtors of their right to contest any invoices of a Critical Vendor under the Bankruptcy Code or applicable non-bankruptcy law.

Terms or Negotiated Trade Terms for the duration of the Chapter 11 Cases by entering into trade agreements (each, a "Trade Agreement").  Such Trade Agreements, once agreed to and accepted by a Critical Vendor, shall be legally binding contractual arrangements governing the commercial trade relationship between the parties as provided therein.

14.     The Debtors also seek authority, but not direction, to pay the claim of a Critical Vendor that threatens to withhold goods or services unless its prepetition claim is paid if the Debtors conclude, in their reasonable business judgment, that such payment is necessary for the preservation of the Debtors' estates; *provided*, *however*, that any such payments will be subject to the Critical Vendor Cap,.  Additionally, the Debtors request that, if a Critical Vendor accepts payment pursuant to the Proposed Order after agreeing to provide services on Customary Trade Terms or Negotiated Trade Terms, and thereafter does not continue to provide goods and services on such terms and thereafter does not continue to provide goods or services on Customary Trade Terms or Negotiated Trade Terms (regardless of whether a Trade Agreement has been executed), (i) any payment on account of a Critical Vendor Claim may be deemed, in the Debtors' reasonable business judgment, to be an improper postpetition transfer and, therefore, recoverable by the Debtors in cash upon written request, and (ii) upon recovery of the payment by the Debtors, the Critical Vendor Claim shall be reinstated as if the payment had not been made.  If there exists an outstanding postpetition balance due from the Debtors to such vendor, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by this Motion to such outstanding postpetition balance, and such Critical Vendor will be required to repay the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

**RELIEF REQUESTED**

15.     The Debtors seek entry of an order (i) authorizing, but not directing, the Debtors to pay the Critical Vendors Claims up to the applicable Critical Vendor Cap, as set forth herein, and (ii) authorizing the Banks to honor and pay all checks and electronic transfer requests for payment of such Critical Vendor Claims.

**BASIS FOR RELIEF**

A.     **Paying Critical Vendor Claims Is in Furtherance of the Debtors' Duties Under Sections 1107(a) and 1108 of the Bankruptcy Code.**

16.     Sections 1107(a) and 1108 of the Bankruptcy Code authorize a debtor in possession to continue to operate its business.  Indeed, a debtor in possession has a duty to protect and preserve the value of its estate, and may pay prepetition claims if necessary for the debtor to fulfill that duty.  *See, e.g., In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim.").  The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.*

17.     The *CoServ* court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtors' fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

18.    Here, payment of the Critical Vendor Claims meets each prong of the *CoServ* test. First, as described in the protocol above, the Debtors have narrowly tailored the definition of "Critical Vendors" to encompass only those vendors that provide essential goods or services and may refuse to provide those goods or services absent payment of their prepetition claims. Second, due to the difficulty associated with finding alternate sources for the critical goods and services, the potential harm and economic disadvantage that would stem from the failure of any of the Critical Vendors to perform, as further described above, is disproportionate to the amount of any Critical Vendor Claim sought to be paid.  Third, with respect to each of the Critical Vendor Claims, the Debtors have examined and will continue to examine the other options short of payment of the Critical Vendor Claims and will only pay Critical Vendor Claims if the Debtors determine that there exists no practical or legal alternative to payment of the Critical Vendor Claims to avoid detrimental impact on their business and restructuring efforts.

**B.    Payment of the Critical Vendor Claims Is Appropriate Under Section 363(b).**

19.    Section 363(b) of the Bankruptcy Code permits a debtor to use estate property "other than in the ordinary course of business" after notice and a hearing.  11 U.S.C. § 363(b)(1). Courts have authorized relief under section 363(b) where a debtor demonstrates a sound business justification for such relief.  *See Comm. of Equity Sec. Holders v. Lionel Corp.  (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (stating that a "debtor must articulate some business justification, other than mere appeasement of major creditors").

20.     Once a debtor has articulated a valid business justification, there "'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).  This business judgment rule applies in chapter 11 cases like these.  *Id.* (noting that the "Delaware business judgment rule principles have 'vitality by analogy' in Chapter 11").

21.     As discussed above, the Debtors have determined, in the sound exercise of their business judgment, that the goods and services provided by the Critical Vendors are vital to the Debtors' continuing business operations.  As such, the failure to honor their prepetition obligations to the Critical Vendors could have a significant adverse effect on the Debtors' continued operation and their ability to maximize the value of their estates.  Accordingly, the preservation and protection of the Debtors' business through ongoing relationships with the Critical Vendors provides a sufficient business justification for payment of Critical Vendor Claims, even if such payments were deemed to be outside the ordinary course of business.  *See Ionosphere Clubs*, 98 B.R. at 17.

22.     The Debtors, therefore, seek authorization under section 363(b) of the Bankruptcy Code to pay the Critical Vendor Claims.

**C.     The Doctrine of Necessity and Section 105(a) of the Bankruptcy Code Further Support Payment of the Critical Vendor Claims.**

23.     The Debtors' proposed payment of the Critical Vendor Claims also should be authorized pursuant to section 105 of the Bankruptcy Code and under the "doctrine of necessity." Section 105(a) of the Bankruptcy Code authorizes the Court to enter any order "necessary or

appropriate" to carry out the provisions of the Bankruptcy Code.  11 U.S.C. § 105(a).  Under the

doctrine of necessity, the Court can authorize payment of certain prepetition claims prior to the

completion of the reorganization process when the payment of such claims is necessary to the

reorganization.[6]  *See In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981)

(authorizing payment of creditors' claims under "necessity of payment" doctrine); *In re Penn*

*Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (stating that the necessity of payment

doctrine permits "immediate payment of claims of creditors where those creditors will not supply

services or materials essential to the conduct of the business until their pre-reorganization claims

have been paid"); *In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (stating that where

the debtor cannot survive absent payment of certain prepetition claims, the doctrine of necessity

should be invoked to permit payment); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92

(Bankr. D. Del. 1994) (noting that the debtors "may pay pre-petition claims that are essential to

continued operation of business").

24.     For the reasons set forth herein, and in light of the critical need for the Debtors to

preserve the value of their business to effect a successful restructuring, payment of the Critical

Vendor Claims is essential to the Debtors' Chapter 11 Cases.  As set forth in detail above, it

would likely be expensive and difficult, if not impossible, for the Debtors to find alternative

sources for the goods and services currently provided by the Critical Vendors.  In addition, any

---

[6]     The Court's power to utilize the doctrine of necessity in chapter 11 cases derives from the Court's inherent equitable powers and its statutory authority under section 105(a).  The United States Supreme Court first articulated the doctrine of necessity over a century ago, in *Miltenberger v. Logansport, Crawfordsville & Sw. Ry. Co.*, 106 U.S. 286 (1882), in affirming the lower court's authorization of the use of receivership funds to pay pre-receivership debts owed to employees, vendors, and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in receivership.  *See id.* at 309–14.  The modern application of the doctrine of necessity is largely unchanged from the Court's reasoning in *Miltenberger*.  *See In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581–82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the [debtor's] continued operation . . . in serious jeopardy.").

interruption in the delivery of products to the Debtors would impair the Debtors' ability to operate high-quality restaurants and create a real risk of customer attrition. Therefore, payment of the Critical Vendor Claims should be authorized pursuant to section 105(a) of the Bankruptcy Code and the doctrine of necessity.

**D.    Payment of Critical Vendor Claims That Satisfy Bankruptcy Code Section 503(b)(9) Now Will Have Little to No Effect on Creditor Recoveries In The Chapter 11 Cases.**

25.    As stated previously, a substantial percentage of the Critical Vendor Claims are entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code. Because such claims are entitled to priority status under section 503(b)(9) of the Bankruptcy Code, the Debtors must pay the claims in full to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(A) (requiring payment in full of claims entitled to priority). Although section 503(b)(9) of the Bankruptcy Code does not specify a time for payment of these expenses, bankruptcy courts have the discretion to allow for distributions to administrative claimants prior to confirmation if the debtor has the ability to pay and there is a need to pay. Indeed, nothing in the Bankruptcy Code prohibits the Debtors from paying such claims sooner if they choose to do so, or the Court from exercising its discretion to authorize the postpetition payment of such obligations prior to confirmation of a chapter 11 plan. Thus, payment of any Critical Vendor Claims with section 503(b)(9) priority only affects the timing, but not the amount, of payment. As a result, the Debtors respectfully submit that they should have the authority (but not the direction) to pay Critical Vendor Claims subject to the Critical Vendor Cap, a substantial amount of which would be paid ahead of general unsecured creditors even absent the relief requested in the Motion.

26.    Since the enactment of section 503(b)(9) of the Bankruptcy Code, courts in this jurisdiction have exercised their discretion and have routinely authorized the payment of prepetition claims under section 503(b)(9) of the Bankruptcy Code at the outset of a chapter 11

case when requested by a debtor.  *See, e.g., In re Trump Entm't Resorts, Inc.*, Case No. 14-12103 (KG) (Bankr. D. Del. Sept. 10, 2014 (interim order,) and Oct. 6, 2014 (final order)).  Indeed, in granting a request for similar relief, at least one judge in this District asked an objecting United States Trustee, "[a]rguably, would you agree that the debtor would be able to pay the 503(b)(9) claims without Court approval?"  Tr. of Hr'g Held on Oct. 31, 2006, at 24:14-16, *In re Dura Auto.*, Case No. 06-11202 (KJC) (Bankr. D. Del. Oct. 31, 2006) (approving payment of claims under section 503(b)(9) of the Bankruptcy Code as part of "first day" relief).  Here, the Debtors believe that pre-plan payment of the 503(b)(9) claims of certain Critical Vendors is warranted where those parties are willing to provide Customary or Negotiated Trade Terms and where the vendor will agree to provide goods that are absolutely essential to the Debtors' operations in exchange for pre-confirmation payment.

**E.      Request for Authority for Banks to Honor and Pay Checks in Connection Herewith**

27.      In addition, by this Motion, the Debtors request that their Banks be authorized, when requested by the Debtors, to receive, process, honor, and pay any and all checks presented for payment of, and to  honor all fund transfer requests made by the Debtors related to the prepetition obligations described herein, whether such checks were presented or fund transfer requests were submitted before or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments.  The Debtors represent that these checks are drawn on identifiable disbursement accounts and can be readily identified as relating directly to the authorized payment of obligations described herein.  Accordingly, the Debtors believe that checks other than those relating to authorized payments will not be honored inadvertently.

28.      For the foregoing reasons, the Debtors believe that granting the relief requested herein is appropriate and in the best interests of their estates and creditors.

**F.      Request for Finding of Satisfaction of Bankruptcy Rule 6003(b)**

29.      Under Bankruptcy Rule 6003, the Court may authorize the Debtors to satisfy the Critical Vendor Claims because such relief is necessary to avoid immediate and irreparable harm.  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001(c)(2)).

30.      As described above and in the First Day Declaration, the continuity and viability of the Debtors' business operations relies heavily on the uninterrupted delivery of essential food, products, and supplies.  The failure of any Critical Vendor to deliver essential food, products, or supplies to the Debtors would have immediate and detrimental consequences to the Debtors' businesses and would decrease value to the detriment and prejudice of all of the Debtors' stakeholders.  The Debtors cannot risk even the perception that their restaurants will offer anything but the highest level of food and beverage quality and quantity for the duration of the Chapter 11 Cases.  Moreover, it is the Debtors' business judgment that continuation of their positive relationship with the Critical Vendors is critical to their continued operations and greatly increases the likelihood of successfully prosecuting the Chapter 11 Cases.  A substantial majority of the Critical Vendor Claims sought to be paid pursuant to this Motion will come due in the first 25–30 days of the Chapter 11 Cases, or the Debtors believe such Critical Vendors could seek to impose adverse payment terms going forward absent reasonable assurance of bills being paid during the bankruptcy cases.

31.     Accordingly, the Debtors respectfully submit that the relief requested herein is necessary to avoid immediate and irreparable harm and that, therefore, Bankruptcy Rule 6003 is satisfied.

## REQUEST FOR WAIVER OF STAY

32.     Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth throughout this Motion, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), as any delay in satisfying the Critical Vendor Claims would jeopardize the Debtors' business operations and their efforts in connection with the Chapter 11 Cases, to the detriment of their estates and creditors.

33.     For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable.

## DEBTORS' RESERVATION OF RIGHTS

34.     Nothing in this Motion or the Proposed Order attached hereto (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to the validity, priority, or amount of any claim against the Debtors or their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against a Critical Vendor; or (iv) shall be construed as a promise to pay a claim.

01:22436618.4

## NOTICE

35.     The Debtors have provided notice of this Motion to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney General for the District of Delaware; (iv) the Internal Revenue Service; (v) counsel for Raven Capital Management LLC; (vi) counsel for Bank of Colorado; (vii) counsel for Riesen Funding LLC; (viii) the Debtors' cash management banks; and (ix) those creditors holding the thirty (30) largest unsecured claims against the Debtors' estates (on a consolidated basis).  Notice of this Motion and any order entered on this Motion will be served as required by Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

01:22436618.4

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order,

granting the relief requested herein and such further relief as may be just and proper under the

circumstances.

Dated:    Wilmington, Delaware
          October 18, 2017

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Ryan M. Bartley*
Michael R. Nestor (No. 3526)
Edmon L. Morton (No. 3856)
Ryan M. Bartley (No. 4985)
Elizabeth S. Justison (No. 5911)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Tel:    (302) 571-6600
Fax:    (302) 571-1253
Email:  mnestor@ycst.com
        emorton@ycst.com
        rbartley@ycst.com
        ejustison@ycst.com

-and-

Jeffrey C. Krause (CA No. 94053)
Michael S. Neumeister (CA No. 274220)
Emily B. Speak (CA No. 294852)
Brittany N. Schmeltz (CA No. 313552)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071
Tel:    (213) 229-7000
Fax:    (213) 229-7520
Email:  jkrause@gibsondunn.com
        mneumeister@gibsondunn.com
        espeak@gibsondunn.com
        bschmeltz@gibsondunn.com

*Proposed Counsel for the Debtors
and Debtors in Possession*

01:22436618.4

17

## EXHIBIT A

## PROPOSED ORDER

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| MAC ACQUISITION LLC, *et al.*,[1] | Case No. 17-_____ (___) |
| Debtors. | (Jointly Administered) |
|  | Ref. Docket No. ____ |

**ORDER, PURSUANT TO SECTIONS 105(a), 363(b), 503(b)(9), 1107(a), AND
1108 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE DEBTORS
TO PAY PREPETITION CLAIMS OF CRITICAL VENDORS AND
(II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND
ELECTRONIC TRANSFER REQUESTS RELATED TO THE FOREGOING**

Upon consideration of the *Debtors' Motion for Entry of an Order, Pursuant to Sections
105(a), 363(b), 503(b)(9), 1107(a), and 1108 of the Bankruptcy Code, (I) Authorizing the
Debtors to Pay Prepetition Claims of Critical Vendors and (II) Authorizing Banks to Honor and
Process Checks and Electronic Transfer Requests Related to the Foregoing* (the "Motion")[2] filed
by the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the
entry of an order, pursuant to sections 105(a), 363(b), 503(b)(9), 1107(a), and 1108 of the
Bankruptcy Code, (i) authorizing, but not directing, the Debtors to pay the Critical Vendor
Claims held by Critical Vendors in an aggregate amount not to exceed the applicable Critical
Vendor Cap and (ii) authorizing the Banks to receive, process, honor, and pay checks presented
for payment and electronic payment requests relating to the foregoing; and upon consideration of
the First Day Declaration; and this Court having found that it has jurisdiction over this matter

---

[1]      The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Mac
Acquisition LLC (6362); Mac Parent LLC (6715); Mac Holding LLC (6682); Mac Acquisition of New Jersey LLC
(1121); Mac Acquisition of Kansas LLC (3910); Mac Acquisition of Anne Arundel County LLC (6571); Mac
Acquisition of Frederick County LLC (6881); Mac Acquisition of Baltimore County LLC (6865); and Macaroni
Grill Services LLC (5963).  The headquarters for the above-captioned Debtors is located at 1855 Blake St., Ste. 200,
Denver, CO 80202.

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the
Motion.

pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from

the United States District Court for the District of Delaware dated as of February 29, 2012; and

this Court having found that venue of these cases and the Motion in this District is proper

pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this matter is a core

proceeding pursuant to 28 U.S.C. § 157(b); and this Court having determined that it may enter a

final order consistent with Article III of the United States Constitution; and this Court having

found that notice of the Motion has been given as set forth in the Motion and that such notice is

adequate and no other or further notice need be given; and a hearing having been held to

consider the relief requested in the Motion; and upon the record of the hearing and all of the

proceedings had before this Court; and this Court having found and determined that the relief

sought in the Motion is in the best interests of the Debtors, their estates, their creditors, and all

other parties in interest; and that the legal and factual bases set forth in the Motion establish just

cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor,

**IT IS HEREBY ORDERED THAT**:

1.       The Motion is GRANTED as set forth herein.

2.       The Debtors are authorized, but not directed, to honor, pay, or otherwise satisfy

amounts on account of Critical Vendor Claims; *provided*, *however*, that such payments shall not

exceed $700,000 (the "Critical Vendor Cap") unless otherwise ordered by this Court.

3.       The Debtors are authorized, but not directed, to condition the payment of Critical

Vendor Claims upon such Critical Vendor's agreement to continue supplying goods or services to

the  Debtors in accordance with trade terms at least as favorable to the Debtors as those practices and

programs  (including credit limits, pricing, timing of payments, availability, and other terms) in place

prior to the Petition Date (the "Customary Trade Terms"), or in the alternative to negotiate trade

terms with any Critical Vendor, as a condition to payment of any Critical Vendor Claim, that

vary from the Customary Trade Terms (the "Negotiated Trade Terms") to the extent the Debtors

determine, in their reasonable business judgment, that such terms are necessary to procure

essential goods or services or are otherwise in the best interests of the Debtors' estates.

4.    The Debtors are authorized, but not directed, to condition the payment of Critical

Vendor Claims upon such Critical Vendor's agreement to continue supplying goods or services

on Customary Trade Terms or Negotiated Trade Terms for the duration of the Chapter 11 Cases

by executing trade agreements (each a "Trade Agreement").   Such Trade Agreements, once

agreed to and accepted by a Critical Vendor, shall be legally binding contractual arrangements

governing the commercial trade relationship between the parties as provided therein.

5.    If a Critical Vendor accepts payment pursuant to this Order after agreeing to

provide services on Customary Trade Terms or Negotiated Trade Terms, and thereafter does not

continue to provide goods and services on such terms (regardless of whether a Trade Agreement

has been executed), then (i) any payment on account of a Critical Vendor Claim may be deemed,

in the Debtors' reasonable business judgment, to be an improper postpetition transfer and,

therefore, recoverable by the Debtors in cash upon written request, and (ii) upon recovery of the

payment by the Debtors, the Critical Vendor Claim shall be reinstated as if the payment had not

been made.  If there exists an outstanding postpetition balance due from the Debtors to a Critical

Vendor, the Debtors may elect to recharacterize and apply any payment made pursuant to this

Order to such outstanding postpetition balance, and the Debtors may then take any and all

appropriate steps to cause such Critical Vendor to repay payments made to it on account of its

prepetition claim to the extent that such payments exceed the postpetition amounts then owing to

such Critical Vendor.  Notwithstanding the foregoing, the Debtors' exercise of remedies pursuant to this paragraph is subject to entry of a further order, which the Debtors may seek by filing a motion to enforce the terms of this Order on not less than five (5) business days' notice to the affected counterparty.

6.      The Debtors are authorized, but not directed, to pay the claim of a Critical Vendor that threatens to withhold goods or services unless its prepetition claim is paid if the Debtors conclude, in their reasonable business judgment, that such payment is necessary for the preservation of the Debtors' estates; *provided*, *however*, that any such payments will be subject to the applicable Critical Vendor Cap.

7.      The Banks are authorized, when requested by the Debtors, to receive, process, honor, and pay any and all checks drawn on, or electronic transfer requests from, their accounts, whether such checks or requests are presented or submitted prior to or after the Petition Date, to the extent such checks or requests are expressly identified by the Debtors as related directly to the payment of Critical Vendor Claims.

8.      On the fifth (5th) business day of each month, the Debtors shall provide the Office of the United States Trustee and the advisors to any official committee a report of all payments made under this Order.

9.      Nothing in this Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to the validity, priority, or amount of any claim against the Debtors or their estates; (iii) shall impair, prejudice, waive, or

otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against a Critical Vendor; or (iv) shall be construed as a promise to pay a claim.

10.     The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

11.     The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this Order.

12.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

13.     All time periods referenced in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

14.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.


Dated: _____, 2017
          Wilmington, Delaware


                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE

01:22436618.4